[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE' MOTION FOR SUMMARY JUDGMENT
Plaintiff Vera Faigel has filed a complaint against Fairfield University stemming from its action in terminating her from its academic Nursing Program. The complaint is presented in four counts.
In the first count plaintiff Vera Faigel alleges that she is a Russian immigrant who holds an M.S. degree in engineering and who for twelve years was an assistant professor in the Moscow Telecommunication College. She further alleges that in 1991 she enrolled at Fairfield University for an 18 month accelerated program for obtaining a B.S. degree in Nursing. She alleges that Fairfield University agreed to accept many of her credits from her prior engineering studies, and that the University accepted her into its Nursing Program which was designed for applicants who held a B.S. degree in another field.
The plaintiff alleges that she paid the tuition and although she completed the first semester with a 3.1 grade point academic average the University thereafter changed the academic requirements for graduation in its Nursing Program by requiring her to take an additional eleven courses. She alleges further that after receiving a grade of C — in a course she was required to take it again, and thereafter received a B in the course. The plaintiff alleges that a particular faculty member unfairly grading her performance in several courses resulted in her receiving failing grades. In September of 1994 the University gave plaintiff the opportunity to remain in the program by passing a particular "performance test." The plaintiff alleges that a particular faculty member decided that she had not passed the performance test. She alleges that CT Page 7153 she was dismissed from the Nursing Program in September of 1994. The plaintiff appealed the dismissal to the Vice-President of the University. The appeal was denied on March 28, 1995.
In the first count of her complaint the plaintiff claims that the University breached its contract to her by later requiring her to take the additional eleven courses as prerequisites to graduation. In a second count the plaintiff alleges that the actions of the defendant University resulted in the University taking her money by false pretenses. In a third count the plaintiff alleges that the aforesaid actions of the University were extreme and outrageous, were carried out maliciously, and caused her to suffer extreme emotional distress. In a fourth count the plaintiff claims that the actions of the University constituted unfair and deceptive acts in violation of Conn. Gen. Stat. S42-110b — the Connecticut Unfair Trade Practices Act.
Defendant Fairfield University denies any alleged wrongdoing. In addition, the defendant asserts several special defenses, including the statute of limitations, estoppel and waiver. Furthermore, the defendant has filed a Motion for Summary Judgment on the grounds that there exists no genuine issue as to any material fact, and that therefore it is entitled to judgment as a matter of law.
Rule 17-49 of the Connecticut Practice Book states the following as to summary judgment: "[t]he judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show what there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The Appellate Court has reviewed the standards applied to each party and the trial court in responding to a motion for summary judgment.
 Although the burden of showing the nonexistence of any material fact is on the party seeking summary judgment, "the party opposing [summary judgment] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . ." (Internal quotation marks omitted.) Danziger v. Shaknaitis, supra; Nardi v. AA Electronic Security Engineering, Inc., 32 Conn. App. 205, 209, 628 A.2d 991
(1993); Cortes v. Cotton, 31 Conn. App. 569, 572-73, 626 A.2d 1306 (1993). In deciding motions for summary judgment, the trial court is obligated to construe the evidence in the light most favorable to the nonmoving party. Scrapchansky v. Plainfield, supra; Nardi v. AA Electronic Security Engineering, Inc., supra. The test CT Page 7154 to be applied is whether a party would be entitled to a directed verdict on the same facts.
 Gabrielle v. Hosnital of St. Raphael, 33 Conn. App. 378,383 (1994).
From the pleadings, and the proof submitted in connection with the motion for summary judgment the court finds the facts set out in the discussion that follows. Plaintiff Vera Faigel attended Fairfield University's 18-month accelerated program for a B.S. degree in nursing beginning in June of 1991 and continuing until her disputed dismissal on September 13, 1994. During the matriculation process, the plaintiff met with Dean Fasano of the defendant's School of Nursing, explained the nature and extent of her educational and professional background and her desire to enter the nursing field. Dean Fasano, acting within the scope of her agency as dean on behalf of the school, required the plaintiff to obtain and supply an official course-by-course evaluation of her educational background from the World Educational Service in New York. She supplied this documentation on April 4, 1991, and was thereafter accepted into the accelerated program as a full-time student beginning in June of 1991. The plaintiff was given transfer credits from the Engineering Institute of Railway Transportation in Leningrad, Yale University and the University of New Haven (Exhibits FA).
The Nursing Program requires a minimum "grade of C (73%) in all nursing courses in order to progress to the next semester," and requires students who do not earn a C average to repeat the nursing course once to earn a grade of C or better (Exhibits BD). The University allows its students to obtain two course grades below a 73%, but "if a student receives a third course grade below a 73%, the student must withdraw from the program." (Id.) Plaintiff's first unsatisfactory grade was given in a course entitled "Basic Health Problems" where she received a `D.' She repeated the course pursuant to the Nursing Program Policy, the guidelines of which are set forth in Exhibit A, and received a satisfactory grade. In the Spring Term of 1993, the plaintiff once again received an unsatisfactory grade of "C minus" in another nursing course, "Health Restoration III." She was denied a request to do additional work to raise the grade, was once again required to repeat the course pursuant to the Nursing Program's policy and then received a satisfactory grade. On December 17, 1993, Dean Fasano sent a memorandum to the plaintiff reminding her of the minimum grade policy, which she signed and returned to the department (Exhibit J, Plaintiff's deposition, p. 85). In the summer of 1994, the plaintiff was enrolled in Health Maintenance II taught by Dr. Coover. On July 27, 1994, Dr. Coover notified the plaintiff in writing that both her performance in the clinical component of the course and her performance on the midterm (67%) were unsatisfactory CT Page 7155 (Exhibit K) and that she would be required to withdraw from the Nursing Program. The University offered the plaintiff the opportunity to purse a bachelor's degree in its College of Arts and Sciences.
This action was commenced on July 10, 1997. Plaintiff asserts that Dean Fasano, acting on behalf of Fairfield University, made certain promises by accepting transfer credits for courses which she had already taken and subsequently required her to retake the courses at Fairfield University. Plaintiff's deposition testimony shows the alleged oral contract upon which her primary claim for relief relies:
 She [Dean Fasano] told me that she will transfer a lot of credits, and I will be able to finish this program in 18 months.
(Plaintiff's deposition of April 18, 2000, page 40).
Thus, the plaintiff claims that Dean Fasano's statements regarding the number of transferring credits created an oral contract, that Fairfield University was bound by this promise, and that its conduct generally warrants a finding for breach of contract. However, the plaintiff also states in her deposition testimony that she voluntarily continued in the program once she realized that the additional courses were now being required.
 Q: So, you further came to the realization that your program of studies would take longer than 18 months; is that correct?
A: Correct.
 Q: And understanding that, you made a decision at that time to continue in the Nursing Program at Fairfield University, correct?
 A: Correct. My heart was there, I wanted to become a nurse.
(Id. at pages 43-44, emphasis added).
 Discussion
Whether or not and under what circumstances a student may bring a legal action against a college or university related to academic offerings and performance is the subject of much judicial and academic debate. See "Liability of Private School or Educational Institution for Breach of Contract Arising from Provision of Deficient Educational Instruction" 46 ALR5th 581; Fishbein, "New Strings on the Ivory Tower," 12 J. Coll. U. CT Page 7156 L. 381 (1985); Beh "Student versus University: the University's implied Obligation of Good Faith and Fair Dealing," 59 Md.L.Rev. 183 (2000).
Our Supreme Court has embraced the general proposition that the judiciary should defer to the academy in its decision-making relative to academic standards, offerings and the measure of student performance. InGupta v. New Britain General Hospital, 239 Conn. 574 (1996) the Supreme Court was called upon the review the claim of a surgical resident who was dismissed during the final year of his residency training program at New Britain General Hospital. Shailesh Gupta, M.D., the surgical resident, claimed, inter alia, that in terminating him from the residency training program New Britain General Hospital
. . . (1) failed to honor the obligations inherent in the residency agreement as a contract of employment; (2) failed to provide proper training facilities as required by the residency agreement; (3) acted arbitrarily, capriciously or in bad faith; and (4) violated an implied contract of good faith and fair dealing.
 Id. at 580.
After finding that Dr. Shailesh Gupta's claim was one in educational malpractice, the Supreme Court opined:
 The plaintiff's claim that the hospital failed to provide him adequate training must be put into context. "Where the essence of the complaint is that [an educational institution] breached its agreement by failing to provide an effective education, the court is . . . asked to evaluate the course of instruction [and] called upon to review the soundness of the method of teaching that has been adopted by [that] educational institution." (Internal quotation marks omitted.) Ross v. Creighton University, 957 F.2d 410, 416 (7th Cir. 1992). This is a project that the judiciary is ill equipped to undertake. See id.; Donohue v. Copiague Union Free School District, 47 N.Y.2d 440, 445, 391 N.E.2d 1352, 418 N.Y.S.2d 375
(1979); Cavaliere v. Duff's Business Institute, 413 Pa. Super. 357, 370, 605 A.2d 397 (1992).
Id. at 590.
In Gupta, supra, the Court stated that there are two situations wherein CT Page 7157 the court will recognize a cognizable cause of action in the academic arena: first in a "showing that the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field. . . ." "The second would arise if the educational institution failed to fulfil a specific contractual promise distinct from any overall obligation to offer a reasonable I program." Id. at 592-593. The plaintiff claims that by adding many additional courses to her Nursing program defendant Fairfield University failed to fulfil its initial promise as to the number of courses needed for graduation.
The court has reviewed the documents submitted in support of the defendant University's Motion for Summary Judgment, including the affidavit submitted by its acting Dean of Nursing. The court also has reviewed the discovery and deposition testimony submitted in opposition to the motion for summary judgment. The court finds that the information submitted by the plaintiff does not raise an issue that the decision of the university requiring her withdrawal from the Nursing curriculum was any thing other than a purely academic decision and or that it was based upon a breach of a "contractual promise distinct from any overall obligation to offer a reasonable program."
The academic information certainly shows that the plaintiff had considerable difficulty mastering certain of the course work. Clearly a degree in nursing should reflect that the graduate possesses the requisite medical knowledge and skills that were derived from a reasonable program as determined and acknowledged by the academy; namely, Fairfield University.
Even if the decision of the university could be construed as a violation of a specific promise to take a specific number of courses (no such specificity is claimed by the plaintiff) the plaintiff agreed to continue in the program after — according to her deposition testimony — she realized that the duration of the program would exceed eighteen months. From the foregoing, the court finds that the plaintiff's claim is essentially one of educational malpractice — relief for which is judicially unavailable. See Gupta v. New BritainHospital, supra See also the following quotation cited by the defendants from Board of Curators v. Horowitz, 435 U.S. 78 (1977).
 Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative CT Page 7158 decision making.
 Id. 90.
Having so found the court finds further that the plaintiff has not provided an evidential foundation that demonstrates the existence of a genuine issue of material fact supporting her allegations that the defendant obtained her money by false pretense. The court finds that there are insufficient allegations and insufficient offerings of proof to support the plaintiff's claim of intentional infliction of emotional distress. See Petyan v. Ellis, 200 Conn. 225 (1991). The court further finds that there are insufficient allegations in the complaint for invoking the provisions of the Connecticut Unfair Trade Practices Act, § 42-110b, even if that act were applicable to educational institutions. See Banerjee v. Roberts, 641 F. Sup. 1093 (D.Conn. 1986).
Furthermore, the court agrees with the defendant that two year provision of § 5 § 2-584, [52-584], would bar the plaintiff's claim in educational malpractice, if such a claim were cognizable.
For the foregoing reasons, the defendant's Motion for Summary Judgment is granted.
Clarance J. Jones, Judge